HENRY WELSH, Appellant, v. JOHN TAYLOR, Respondent.

*Grant by a deed of a privilege to use an alley-way — the privilege is not extinguished by an omission to use it — an adjacent owner, who has notice that a building is being erected over the alley by a person who is chargeable with notice of the rights of such adjacent owner, is not estopped from maintaining an action to remove it — an obstruction will not be adjudged to be removed when adequate compensation can be made by the recovery of damages.*

Upon the trial of an action, brought by the plaintiff, as the owner of premises on the southerly side of Franklin street, in the city of New York, to remove an obstruction, consisting of a building, from the rear part of an alley-way adjoining his property, and to prevent the placing and maintaining, across the entrance to the alley of a gate which was locked, it appeared that the property, including the alley and that bounding it, was originally owned by A. L. Stewart, who, in 1821 and 1822, conveyed the land on the westerly side of the alley to one Oakley, with the right and privilege of passing and repassing through the said alley without hindering, obstructing or annoying such other persons as may be legally privileged to pass through the same, subject to the payment of a just proportion of the expense of regulating and repairing the same, and of such taxes and assessments as might be imposed thereon.

**138**         WELSH *v.* TAYLOR.

In 1836 the property, with the same right and subject to the same duties, was conveyed by Oakley to Smith Harriott, who died leaving three children and a widow, to the latter of whom he gave by his will an estate for life therein. After her death, in January, 1877, the daughter conveyed her interest in the premises to her brothers, and they, on March 31, 1879, conveyed the same to the plaintiff with the rights in the alley.

In 1822 Stewart conveyed the land on the easterly side of the alley, extending sixty-two feet and one inch southerly from Franklin street, and a lot of land at the southerly extremity of the alley, where it was about twenty feet in width, to a church, with the same rights in the alley and subject to the same duties as were stated in the deed to Oakley. The property, passing through intermediate conveyances, came in November, 1859, to James B. Wilson and the defendant John Taylor, to whom was also conveyed, in 1872, the residue of the premises, bounding the alley on the east.

Upon the trial the evidence on the part of the defense clearly indicated that after the conveyance of the property to the defendant and Wilson, in 1859, they took the exclusive possession of the alley-way, and kept the gate across its entrance on Franklin street locked, and prevented the use of the alley by any other person than themselves and others in their employment, or using it under their authority, and that the building, of which complaint was made, was erected in 1872 and 1873, and extended across the rear of the alley for the width of about twenty feet.

The evidence showed that Smith Harriott, one of the owners in common of the remainder, was informed by his mother, the life tenant, that Taylor & Wilson were putting up a building on the rear of the alley, and that he made no objection to the erection of the building. His brother, the other joint-owner, testified, however, that he first knew of the building being placed on the alley in the summer of 1886.

*Held,* that this evidence did not create any estoppel against the brothers or against their sister, as neither of them did anything or said anything in any form inducing Wilson or the defendant Taylor to build upon the alley.

That, as the conveyances of the property, bounded upon the east side of the alley-way, to Taylor & Wilson contained the same privileges and imposed the same duties as were contained in the original deeds from Stewart, they were, when the building was commenced, chargeable with knowledge of the rights of the adjacent owners to the use and enjoyment of the alley.

*It seems,* that if there had been an actual assent on the part of these owners to the erection of the building, and Wilson and the defendant had acted upon that in putting it up, then the right to use the part of the alley covered by the building as an alley-way would have been extinguished.

The court found that, since 1842, the property owned by the plaintiff at the commencement of the action had been separated from the alley by the easterly wall of a house standing upon the lot, and a high close board fence extending from there to the rear of the alley, until 1879, when, after the commencement of this action, the plaintiff opened the gate on Franklin street.

*Held,* that the omission to use the alley, and the enclosure of the property on the

line with it, was not an abandonment or extinguishment of the easement, secured as it was, by a deed, to the owners of the adjacent property.

That where the easement is created by grant something more than an omission to use it is required to extinguish it.

That where the easement is created by deed it can only be lost, where no estoppe arises, by an adverse user extending through such a period of time as is sufficient to create a prescriptive right, and twenty years' user is necessary for that purpose.

The alley proceeded southerly from the southerly line of Franklin street eighty-three feet, leaving sixty-three feet of it northerly of the northerly line of the defendant's building entirely unobstructed, except by the gate which was closed by the street.

*Held*, that the plaintiff had the legal right to maintain this action to have the gate opened and thereby secure access to and from that portion of the alley which had not been obstructed by the building.

It was not alleged in the complaint that the use of the twenty feet of the southerly part of the alley covered by the building was necessary for the enjoyment or convenience of the plaintiff's property, nor was it made to appear that, in passing to or from any part of his property, this part of the alley was necessary or that the defendant was not entirely responsible.

*Held*, that as the building was a valuable and expensive structure, and it was quite evident that a recovery of a sum of money by way of damage would compensate the plaintiff for the loss or injury sustained by the closing of the rear twenty feet of the alley, it should not be adjudged to be removed as a nuisance or unlawful obstruction.

APPEAL from a judgment recovered on a trial at a Special Term of the Supreme Court dated February 7, 1888, and entered in the office of the clerk of the county of New York on February 8, 1888.

*Martin J. Keogh,* for the appellant.

*John E. Parsons,* for the respondent.

DANIELS, J.:

The action was brought by the plaintiff, as the owner of premises on the southerly side of Franklin street in the city of New York, to remove an obstruction, consisting of a building, from the rear part of an alley-way adjoining his property, and to prevent the placing and maintaining across the entrance to the alley a gate which was locked, and thereby excluding the plaintiff from the enjoyment of the alley. The property, including the alley and that bounding it, was originally owned by Alexander L. Stewart. He conveyed the land on the westerly side of the alley to Richard

·Oakley in the years 1821 and 1822, and in the conveyances so made he conveyed the "right and privilege of passing and repassing through the said alley without hindering, obstructing or annoying such other persons as may be legally privileged to pass through the same, and subject at all times hereafter to the bearing and paying of a just proportion of the expenses of regulating and repairing the · said alley, and of such taxes and assessments as may be laid thereon." The property was afterwards conveyed with the same rights and subject to the same duties, by Oakley to Smith Harriott, in 1836. He died leaving his widow and three ·children. By his will an estate for life was given to his widow in this and other property, and she died in January, 1877. The testator's daughter conveyed her interest in the premises adjacent to the alley to her brothers, and they on the 31st of March, 1879, conveyed the same to the plaintiff in this action; and all the deeds by which the title passed conveyed the same rights as to the alley, and subject to the same duties as the first deed.

Stewart, the common owner of the property, in 1822 conveyed the land on the easterly side of the alley, extending sixty-two feet and one inch southerly from Franklin street, to the trustees of the Fourteenth Presbyterian Church, and at the same time conveyed a lot of land, .at the southerly extremity of the alley where it was about twenty feet in width, to the same grantee. This property, passing through intermediate conveyances, was in November, 1859, conveyed to James B. Wilson and the defendant, John Taylor, and in 1835 Stewart conveyed to Henry Ogden the residue of the premises bounding the alley on the east. Ogden in 1836 conveyed the same land to Lawrence Ackerman, who died in 1870, and his executors, under a power of sale contained in his will, conveyed the same land to James B. Wilson and the defendant, John Taylor, in 1872. The building of which complaint was made in the action was erected upon this land in 1872 and 1873, and extended across the rear of the' alley for the width of about twenty feet, completely covering and occupying that part of the alley to the exclusion of the grantors of the plaintiff, and also of himself after their deed was executed and delivered to him.

It was stated by the defendant in his evidence that, after the conveyance of the property to himself and Wilson in 1859, they took

the exclusive possession of the alley and kept the gate across. its entrance on Franklin street locked, and they prevented the use of the alley by any other person or persons than themselves and others in their employment, or using it under their authority. It also appeared that a building was erected on the westerly side of the alley, extending part, but not all the way, to the rear of the alley; but from the rear of the building to the southerly extremity of the alley a board fence was erected, inclosing the property finally acquired by the plaintiff, from the alley, and that no use was made. of the alley by the owners of that property, or its occupants, after the defendant and Wilson acquired their title; and that the. alley, from that time, certainly was kept in repair and the taxes paid upon it by Wilson and the defendant. But there was evidence in the case, from tenants of property at the rear part of the alley, that it was used by a person occupying the land bounded on the west by the alley, from time to time, prior to the period when the defendant and Wilson acquired their title; that this occupant was named Brown, and he used the alley as his convenience dictated or required from time to time. The evidence, also, on behalf of the plaintiff, tended to show that an opening was made in the board fence, through which the occupants of this and other property passed to obtain water from a hydrant, but that was controverted in the case. And the evidence on the part of the defense clearly indicated that after November, 1859, Wilson and the defendant. excluded all other persons than those which have been mentioned from the use and occupancy of the alley.

The defendant set up, by way of an affirmative defense, that the owners of the property to which the plaintiff has succeeded abandoned their right to use the alley, and that it thereby became. extinguished; that they also had knowledge of the erection of the building over the southerly portion of the alley; and that they, together with the plaintiff, who received his deed, knowing the building to have then been erected over the alley, were estopped from asserting any right to use or enjoy this alley-way.

The evidence did show that Smith Harriott, one of the owners in common of the remainder in the property, after the decease of his. mother, the life tenant, was informed by her that Taylor and Wilson were putting up a building on the rear of the alley, and that he

made no objection to the erection of the building. The other joint owner, however, Frederick P. Harriott, testified that he first knew of the building being placed upon the alley the summer preceding the trial of the action, and that would be the summer of 1886. And the testimony did not disclose the fact that the evidence of this witness was not truthful or reliable. Neither his evidence nor that given by his brother Smith, created any estoppel in the case against them, or against their sister, who was an owner in common of one-third of the remainder until the year 1877, for neither of them did anything or said anything in any form inducing Wilson, or the defendant Taylor, to build upon the alley. Neither did the fact appear to have come to the knowledge of either Taylor or Wilson, that Smith Harriott had been informed by his mother that this building was in process of erection. It was stated that persons occupying the property, one or more of them, were about and saw what was being done, and had some conversation upon the subject of the building, but as these were tenants in the occupancy of the house, the owners of the property themselves residing at the time at Cherry Valley, the latter were not affected by what was said. The defendant, accordingly, had no fact or circumstances, upon which he could urge that he had been induced to place the building upon the rear part of the alley by any actual or constructive acquiescence of the owners of the property on the west side of the alley. The deeds through which the defendant obtained his title to the property conceded the right to equal enjoyment of the alley to the owners of the property on the west side, and limited both Wilson and the defendant to the "right, privilege and liberty of free ingress, egress and regress into, through and out of the said alley, in common with all other persons entitled to pass through the same, but subject to the bearing and paying of a just and equitable proportion of the costs and charges of repairing and maintaining the said alley, and of such taxes, duties and assessments, both ordinary and extraordinary, as shall or may at any time hereafter be charged, assessed or imposed thereon."

The conveyances of the property, bounded upon the alley, were made with this reservation and qualification, and, when the building was commenced, both Wilson and the defendant Taylor were chargeable with knowledge of precisely this state of the title. In judgment

of law it was known to each that no right existed to build upon or
incumber this alley, for that was the nature of the conveyances to
them, and all of those preceding these conveyances, from the time
when Stewart, the common owner, conveyed the first parcel on the
easterly side of the alley to the Fourteenth Presbyterian Church.
To create an estoppel all the authorities require that the party
depending upon it must have been misled or induced to act as he
did by the conduct or language of the parties whom it is insisted
should be estopped.   Here there was no inducement whatever, but
what was done in the way of building upon the alley was with the
full understanding of the rights of the adjacent owners to its use
and enjoyment.

. The court, in its findings, found as a fact that the owners of the
land upon the westerly side of the alley, or some of them, knew
that this building was being erected upon the alley, and made no
objection to the erection of the same.   But this finding, even if it
had been fully supported by the evidence, did not justify a dismissal
of the complaint; for, as long as one or more of the joint owners
did not know of the erection of the building, and there is no evi-
dence that either the daughter or Frederick Harriott had that
knowledge, the erection of the building upon the rear part of the
alley was a wrong as to them, and a violation of their legal rights.
But even knowledge on the part of the life tenant and of Smith
Harriott, one of the tenants in common in remainder, and the
omission to object to the erection of the building, conferred no right
on the defendant or Wilson to erect it, as long as, by their own con-
veyances, they had information of the fact that this property was
appropriated to the use of the adjacent owners as an alley-way.   If
there had been an actual assent, on the part of these owners, to the
erection of the building, and Wilson and the defendant had acted
upon that in putting it up, then the right to use the part of the
alley covered by the building as an alley-way would have been extin-
guished.   (*Cartwright* v. *Maplesden*, 53 N. Y., 622.)   But no
such assent was derived from either one of the owners of this
adjacent property.

The court, at the trial, found as a fact, upon evidence tending to
establish its existence in the case, that since 1842 the property
owned by the plaintiff at the commencement of the action had been

separated from the alley by the easterly wall of a house standing upon No. 143 and a high close board fence extending from there to the rear of the alley, and that this continued to be the boundary on that line of the alley until 1879, when, as the evidence tended to show, the plaintiff opened the door or gate on Franklin street after the commencement of this action. This proof, and the other evidence given, established no more than the fact that the owners of the property conveyed to the plaintiff did not use the alley-way, and did not contribute to its repair or maintenance, or pay any of the taxes or assessments levied upon it; but an omission to use the alley and the enclosure of the property on the line of it was not an abandonment or extinguishment of the easement secured, as this was, by deed to the owners of this adjacent property. Where the right to an easement depends upon mere use, it will be abandoned by the long discontinuance of that use (3 Kent [7th ed.], 551–554); but where the easement or right of use is acquired by deed, this rule is inapplicable. (*Bannon* v. *Angier*, 2 Allen, 128.) Such an easement as is here considered is an interest in land (*Arnold* v. *Hudson River R. R. Co.*, 55 N. Y., 661), and where it is created by grant something more than an omission to use it is required to extinguish the easement (*Corning* v. *Gould*, 16 Wend., 530); or the party entitled to the use and enjoyment of the easement must appear to have devoted the property, over which the easement existed, to a different and inconsistent object, as was the case in *Crain* v. *Fox* (16 Barb., 184). The mere omission to use an easement, the right to which has been acquired by user, may be, and ordinarily will be, lost in this manner, where that may be inferred to be the intention of the party entitled to the easement. (*Stokoe* v. *Singers*, 8 Ell. & B. 31; *Crossley* v. *Lightowler*, L. R., 3 Eq. Cases, 279; *Cook* v. *Mayor of Bath*, Id., 6 Eq. Cas., 177.) But where the easement is created by deed, there it can only be lost, when no estoppel arises, by an adverse user extending through such a period of time as is sufficient to create a prescriptive right, and twenty years' user is necessary for that purpose (*Parker* v. *Foot*, 19 Wend., 309), and that period of adverse use is required to extinguish the easement derived from a grant. (*Jewett* v. *Jewett*, 16 Barb., 150, 157; *Smiles* v. *Hastings*, 24 id., 44; *Smyles* v. *Hastings*, 22 N. Y., 217, 224; *White* v. *Crawford*, 10 Mass., 187; *Arnold* v. *Stevens*,

24 Pick., 106; *Pope* v. *O'Hara*, 48 N. Y., 447, 452; *Wiggins* v. *McCleary*, 49 id., 346, 348; *Jennison* v. *Walker*, 11 Gray, 423, 425; *Owen* v. *Field*, 102 Mass., 90, 114; *Nitzell* v. *Paschall*, 3 Rawle, 76, 82.)

The evidence of the defendant, as a witness in the case, was to the effect that himself and Wilson took the exclusive possession of the alley after the conveyance to them in November, 1859, but that did not extend through a period of twenty years, for the action was commenced against them by the plaintiff in May, 1879, about six months before the completion of the twenty years. Besides that, no adverse use or occupancy of the alley was either alleged in the answer or found by the court. What the court did find was the abandonment of the use of it already stated, which, of itself, as long as the right had been acquired by grant, did not extinguish that right.

This alley proceeded southerly from the southerly line of Franklin street eighty-three feet, leaving sixty-three feet of it northerly of the northerly line of the defendant's building entirely unobstructed, except by the gate which was closed at the street. The evidence given by the defendant proves the fact against himself that he kept this gate closed, intending thereby to exclude other persons from the use or enjoyment of the alley, not using it under his permission or authority. This fact of the closing of the alley was alleged in the complaint as a ground of action in favor of the plaintiff, and to that extent certainly he was entitled to recover in the action, for the defendant had no legal right by the closing of the entrance to the alley to exclude the plaintiff from its use or enjoyment.

So far as that might be convenient to himself or his property, he had the legal right to maintain this action to have the gate opened, and thereby secure access to and from that portion of the alley which had not been obstructed by the building.

As to the twenty feet of the southerly part of the alley covered by the building, it was not alleged in the complaint that its use was necessary for the enjoyment or convenience of the plaintiff's property. Neither was it made to appear that in passing to or from any part of his property this part of the alley-way was necessary.

And as sixty-three feet of the alley still remained which he was entitled to use, it cannot be inferred from anything appearing in the case that this was not sufficient for all the conveniences required in the enjoyment of his property. And in this state of the case it is quite evident that a recovery of a sum of money by way of damages will remunerate him for the loss or injury sustained by the closing of the rear twenty feet of the alley. And as this building is a valuable and expensive structure, although placed upon the rear of the alley by the wrong of the defendant and Wilson, it should not be adjudged to be removed as a nuisance or unlawful obstruction, when complete indemnity can be secured to the plaintiff in this manner. (*Trustees of Columbia College* v. *Thacher*, 87 N. Y., 311.)

There is no allegation in the complaint and no intimation in the evidence that the defendant is not entirely responsible, or that whatever damages may be recovered will not be collected or paid. And as to this part of the case, therefore, no reason exists for the exercise of the equitable power or authority of the court to compel the removal of the building. The complaint, too, has in part been drawn upon this theory, for it set forth the alleged fact that the plaintiff, by the erection of the building, had sustained damages amounting to the sum of $5,000. As to that part of the case it was for a jury to hear and determine it, unless a trial in that form should be waived. But as to the sixty feet of the alley remaining open and unobstructed otherwise than by the gate located upon Franklin street by the defendant, the case was one for equitable interference; and the plaintiff was not deprived of his right to invoke that interference by opening the gate himself as long as his title to the enjoyment of this part of the alley-way was disputed and resisted by the defendant, who, in his testimony, stated that he would exclude from the use of the alley all persons not acting under his authority or license. The judgment in the case should be reversed and a new trial ordered, with costs to the plaintiff to abide the event.

Van Brunt, P. J., and Bartlett, J., concurred.

Judgment reversed and new trial ordered, with costs to plaintiff to abide event.