SAVONIS, ET UX *v.* BURKE, ET AL.

[No. 80, September Term, 1965.]

*Decided February 7, 1966.*

The cause was argued before HAMMOND, HORNEY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*Paul E. Savonis, in proper person,* with whom was *Vesta Yoder Savonis, in proper person,* on the brief, for appellants.

No brief and no appearance for appellees.

BARNES, J., delivered the opinion of the Court.

This case involves a controversy between two lot owners of waterfront property in Sunrise Beach, Anne Arundel County. The lower court dismissed the complaint at the close of the plaintiffs' evidence. This appeal followed.

The plaintiffs below and appellants in this Court, Paul E. Savonis and wife (the Savonises), acquired the fee simple interest in a waterfront lot on the south side of the Severn River, known as Lot 385 as described in Plat 1, Section 2—Sunrise Beach, 2nd District, Anne Arundel County. This plat is duly recorded among the land records of Anne Arundel County, and deeds for the lots shown on the plat, including the deed by which the Savonises acquired Lot 385, described the lots by reference to the recorded plat and to the respective lot numbers on the plat. Lot 385 is approximately one-quarter acre in area and is

served by a forty foot wide access road, Nancey (Nancy) Lane, which terminates at the Savonis property. For a better understanding of the plat, the reporter is instructed to include as an appendix to this opinion the relevant portion of the plat showing Lots 385 and 386, as well as Lots 387 and 388, and portions of Lot 384 and Nancey Lane.

The defendants below, and appellees in this Court, Joseph L. Burke and wife (the Burkes), were the former fee simple owners of Lot 386, Sunrise Beach, immediately adjoining and to the east of Lot 385. Lot 386 is an inverted "L" shaped tract with a projection approximately twenty-six feet in width immediately to the south of the Savonis property, extending fifty-four feet to the west, abutting on Nancey Lane and affording Lot 386 with access to that road. This projection is clearly shown on the plat to be an integral part of Lot 386. The Savonises claim, however, that this strip should be declared an alley intended for dedication for a public use.

The Savonises maintain that they were interested in purchasing Lot 385 but were concerned that a house, garage, driveway and parking area could not be placed in position on the property to obtain the full "desirable advantages of the scenic view" because of the nature of the tract's access to Nancey Lane. The Burkes indicated to them that the strip of land to the south of the Savonis property was intended for the common use of abutting landowners. Mr. Savonis, an attorney by profession, made an independent study of the plat and concluded, contrary to the clear and unambiguous import of that document, that the strip was indeed a common right-of-way and not an integral part of Lot 386.

The Savonises purchased Lot 385 in March of 1955, erected a house and built a garage and driveway fronting on the projection of the Burke property. The abutting strip of land was shared in common from 1955 until the fall of 1961 when there was a falling out and the Burkes asserted their exclusive title to the abutting land.

We are asked to hold that the Burkes are equitably estopped from asserting their claims in this strip of land because of their disclaimer of exclusive title upon which the Savonises claim they relied to their injury. After institution of this suit,

but before the hearing, the Burkes conveyed Lot 386 to Ruth Denn. Miss Denn intervened as a defendant in this action since she would be bound, as being in privity with the Burkes to the legal consequences of an estoppel if the Savonises could establish its application. *Jaworski v. Jaworski,* 202 Md. 1, 7-8, 95 A. 2d 95, 98 (1953).

Pomeroy, in his *Equity Jurisprudence* (5th ed., vol. 3), § 804, page 189 defines equitable estoppel as follows:

> "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might have otherwise existed, either of property, or contract or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

We have adopted and have continually applied this definition of equitable estoppel. *Bayshore Industries v. Ziats,* 232 Md. 167, 175, 192 A. 2d 487, 492 (1963); *Webb v. Johnson,* 195 Md. 587, 595, 74 A. 2d 7, 10 (1950); *Crane Co. v. Onley,* 194 Md. 43, 50, 69 A. 2d 903, 906 (1949) and the prior cases cited therein.

Equitable estoppel operates as a technical rule of law to prevent a party from asserting his rights where it would be inequitable and unconscionable to assert those rights. *Fitch v. Double "U" Sales Corp.,* 212 Md. 324, 339, 129 A. 2d 93, 101 (1957); *Wright v. Wagner,* 182 Md. 483, 492, 34 A. 2d 441, 446 (1943); *Rody v. Doyle,* 181 Md. 195, 29 A. 2d 290 (1942). It is essential for the application of the doctrine of equitable estoppel that the party claiming the benefit of the estoppel must have been misled to his injury and changed his position for the worse, having believed and relied on the representations of the party sought to be estopped. *Food Fair v. Blumberg,* 234 Md. 521, 532, 200 A. 2d 166, 172 (1964); *Solomon's Marina v. Rogers,* 221 Md. 194, 198, 156 A. 2d 432, 434-435 (1959); *Alvey v. Alvey,* 220 Md. 571, 576, 155 A. 2d 491, 493 (1959); *Liberty Mut. Ins. Co. v. American Auto Ins. Co.,* 220 Md.

497, 501, 154 A. 2d 826, 828 (1959); *Hamlin Mach. Co. v. Holtite Mfg. Co.,* 197 Md. 148, 159, 78 A. 2d 450, 455 (1951); *Brenner v. Plitt,* 182 Md. 348, 364, 34 A. 2d 853, 861 (1943); *Rodgers v. John,* 131 Md. 455, 102 Atl. 549 (1917). Furthermore, one claiming the benefit of an equitable estoppel must have acted in "good faith and with reasonable diligence." *Rupp, Trustee v. Johnston Co.,* 226 Md. 181, 190, 172 A. 2d 875, 880 (1961); *Johnson Lumber Co. v. Magruder,* 218 Md. 440, 448, 147 A. 2d 208, 212 (1958).

*Klein v. Dove,* 205 Md. 285, 107 A. 2d 82 (1954) is similar to this present case in that the plaintiffs there barred access to a right-of-way running over their property, clearly set out on that plat, and designed to give interior lot owners access to a so-called "lake-front area." The plaintiffs claimed that the way had been blocked for a number of years, not amounting to the prescriptive period, and interior lot owners were estopped by their acquiescence and silence to deny that the way had been abandoned. We held that mere non-user of a right-of-way is not necessarily an abandonment of it. The plaintiffs were charged with knowledge and took possession with knowledge that the strip of land did not pass to them under their deed; and mere silence as to rights of record does not create an estoppel.

The Savonises rely on the case of *Machovec v. Shipley,* 171 Md. 339, 189 Atl. 223 (1937) for authority that the doctrine of equitable estoppel should be applied against the Burkes. In *Machovec* we indicated that where the condition of title is known to both parties, or where one party, claiming to have been influenced by the conduct of another, had a convenient means of ascertaining the true state of the title, then an equitable estoppel could not be set up. Mere silence, moreover, would not work an estoppel where there was no duty to speak. Where a party, however, who is interested in the transaction disclaims title, and this representation is relied on by another who is ignorant of the true state of the title, even though it may be a matter of public record, then equitable estoppel may apply. Judge Shehan, writing for this Court in *Machovec,* said:

> "The law is well stated in the case of *Knouff v. Thompson,* 16 Pa. 357, 364, viz: 'The party who has placed his written title on record has given the notice which

every person is bound to know and respect. The law does not require him to go further. But if he speaks or acts, it must be consistent with his recorded title. The law distinguishes between silence and encouragement. Whilst silence may be innocent and lawful, to encourage and mislead another into expenditures on a bad or doubtful title would be a positive fraud, that should bar and estop the party, the author of that encouragement and deception, from disturbing the title of the person whom he misled, by any claim of title in himself.' And this has the support of decisions in a number of states. *Olden v. Hendrick,* 100 Md. (sic. Mo.) 533, 13 S. W. 821; 21 *Corpus Juris,* 1131." (Pages 345-346 of 171 Md., pages 225-226 of 189 Atl.).

The Savonises can not avail themselves of the doctrine enunciated in *Machovec.* They did not rely on the disclaimer of the Burkes which was inconsistent with the recorded title. On the contrary, Mr. Savonis actually studied the plat and is bound by the *actual notice* which even a casual perusal of that document would clearly reveal. Any injury, moreover, which the Savonises suffered by locating their garage and parking area with access to the disputed strip of land is at most minimal. The garage and parking area are so placed as to give access to Nancey Lane with little if any inconvenience.

*Judgment affirmed, appellants to pay the costs.*

Appendix: Portion of Plat 1, Section 2—Sunrise Beach, Anne Arundel County, showing Lots 385 and 386, as well as Lots 387 and 388, and portions of Lot 384 and Nancey Lane.